IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RONALD H. BRITT, on behalf of　　　　　　　　　　　　　　　　　　PLAINTIFF
all wrongful death beneficiaries of
OPAL A. BRITT

vs.　　　　　　　　　　　　　　　CIVIL ACTION No.: 3:19-CV-90-HTW-LRA

MERIT HEALTH CENTRAL, a/k/a
CENTRAL MISSISSIPPI MEDICAL
CENTER, AMERICA MEDICAL
RESPONSE, UNKNOWN INDEPENDENT
PHARMACY CONTRACTOR OF
WILLOW CREEK RETIREMENT
CENTER, DR. FULCHER OF WILLOW
CREEK RETIREMENT CENTER, and
JOHN DOES 1-10.　　　　　　　　　　　　　　　　　　　　　　　　DEFENDANTS

**ORDER**

BEFORE THIS COURT are the Motions to Dismiss filed by Dr. Todd L. Fulcher. **[Docket nos. 5 and 9]**. Dr. Fulcher filed both motions alleging the same grounds. Plaintiff opposes both motions. This court finds that Dr. Fulcher's motions should be denied without prejudice for the following reasons.

**I.　　　JURISDICTION**

According to defendant Dr. Todd L. Fulcher (hereinafter referred to as "Dr. Fulcher"), Plaintiff Ronald Britt (hereinafter referred to as "Britt"), in his complaint, has allegedly asserted a cause of action for a violation of the Emergency Medical Treatment and Active Labor Act (hereinafter referred to as "EMTALA") found at Title 42 U.S.C. § 1395dd[1]. EMTALA is a federal

---

[1] (a) Medical screening requirement
　　In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department,

1

including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

(b) Necessary stabilizing treatment for emergency medical conditions and labor

(1) In general

If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either--

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

(2) Refusal to consent to treatment

A hospital is deemed to meet the requirement of paragraph (1)(A) with respect to an individual if the hospital offers the individual the further medical examination and treatment described in that paragraph and informs the individual (or a person acting on the individual's behalf) of the risks and benefits to the individual of such examination and treatment, but the individual (or a person acting on the individual's behalf) refuses to consent to the examination and treatment. The hospital shall take all reasonable steps to secure the individual's (or person's) written informed consent to refuse such examination and treatment.

(3) Refusal to consent to transfer

A hospital is deemed to meet the requirement of paragraph (1) with respect to an individual if the hospital offers to transfer the individual to another medical facility in accordance with subsection (c) of this section and informs the individual (or a person acting on the individual's behalf) of the risks and benefits to the individual of such transfer, but the individual (or a person acting on the individual's behalf) refuses to consent to the transfer. The hospital shall take all reasonable steps to secure the individual's (or person's) written informed consent to refuse such transfer.

(c) Restricting transfers until individual stabilized

(1) Rule

If an individual at a hospital has an emergency medical condition which has not been stabilized (within the meaning of subsection (e)(3)(B) of this section), the hospital may not transfer the individual unless--

(A)(i) the individual (or a legally responsible person acting on the individual's behalf) after being informed of the hospital's obligations under this section and of the risk of transfer, in writing requests transfer to another medical facility,

(ii) a physician (within the meaning of section 1395x(r)(1) of this title) has signed a certification that1 based upon the information available at the time of transfer, the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the individual and, in the case of labor, to the unborn child from effecting the transfer, or

(iii) if a physician is not physically present in the emergency department at the time an individual is transferred, a qualified medical person (as defined by the Secretary in regulations) has signed a certification described in clause (ii) after a physician (as defined in section 1395x(r)(1) of this title), in consultation with the person, has made the determination described in such clause, and subsequently countersigns the certification; and

(B) the transfer is an appropriate transfer (within the meaning of paragraph (2)) to that facility.

A certification described in clause (ii) or (iii) of subparagraph (A) shall include a summary of the risks and benefits upon which the certification is based.

(2) Appropriate transfer

An appropriate transfer to a medical facility is a transfer--

(A) in which the transferring hospital provides the medical treatment within its capacity which minimizes the risks to the individual's health and, in the case of a woman in labor, the health of the unborn child;

(B) in which the receiving facility--

enactment. This court, therefore, preliminarily finds that it possesses federal question subject matter jurisdiction under Title 28 U.S.C. § 1331[2].

## II. FACTUAL BASIS

Dr. Fulcher challenges the pre-suit notice required by Miss. Code § 15-1-36(15)[3]. Accordingly, this court will only recite the alleged facts which bear upon the sufficiency pre-suit notice Britt is required to serve on Dr. Fulcher prior to filing his lawsuit sounding in medical malpractice.

On December 11, 2016, Opal Britt (hereinafter referred to as "the Decedent"), who had been a resident of Willow Creek Retirement Center (hereinafter referred to as "Willow Creek"), became ill. Decedent had been treated while she was a resident at Willow Creek by a Dr. Fulcher,

---

(i) has available space and qualified personnel for the treatment of the individual, and
(ii) has agreed to accept transfer of the individual and to provide appropriate medical treatment;
(C) in which the transferring hospital sends to the receiving facility all medical records (or copies thereof), related to the emergency condition for which the individual has presented, available at the time of the transfer, including records related to the individual's emergency medical condition, observations of signs or symptoms, preliminary diagnosis, treatment provided, results of any tests and the informed written consent or certification (or copy thereof) provided under paragraph (1)(A), and the name and address of any on-call physician (described in subsection (d)(1)(C) of this section) who has refused or failed to appear within a reasonable time to provide necessary stabilizing treatment;
(D) in which the transfer is effected through qualified personnel and transportation equipment, as required including the use of necessary and medically appropriate life support measures during the transfer; and
(E) which meets such other requirements as the Secretary may find necessary in the interest of the health and safety of individuals transferred. […]
42 U.S.C.A. § 1395dd (West)

[2] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
28 U.S.C.A. § 1331 (West)

[3] (15) No action based upon the health care provider's professional negligence may be begun unless the defendant has been given at least sixty (60) days' prior written notice of the intention to begin the action. No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered. If the notice is served within sixty (60) days prior to the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended sixty (60) days from the service of the notice for said health care providers and others. This subsection shall not be applicable with respect to any defendant whose name is unknown to the plaintiff at the time of filing the complaint and who is identified therein by a fictitious name.
MISS. CODE. ANN. § 15-1-36 (West)

who is named as a defendant in this lawsuit. As a result of her illness, defendant American Medical Response (hereinafter referred to as "AMR") transported her to the hospital facility run by defendant Merit Health Central (hereinafter referred to as "CMMC"). CMMC made the decision to transfer the Decedent to River Oaks Hospital after she had been seen by the staff of the Emergency Department at CMMC. Sometime after her transfer to River Oaks Hospital, Decedent died.

Britt, through his counsel, sent a notice September 11, 2018, to all defendants. The notice Britt sent to Dr. Fulcher was addressed to "Willow Creek Retirement Center – Dr. Fulcher – 49 Willow Creek Lane – Jackson, MS 39276". Britt has provided this court a return receipt requested form from the United States Postal Service (hereinafter referred to as "U.S.P.S.") on which a Dana Rollins (hereinafter referred to as "Rollins") signed for Dr. Fulcher's notice on September 13, 2018.

According to Dr. Fulcher, he never received the pre-suit notice because allegedly: he is not an employee of Willow Creek; his principle place of business is not at Willow Creek; he does not maintain an office at Willow Creek; and he did not authorize anyone at Willow Creek to receive mail for him.

Britt filed his complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi on December 10, 2018. Defendants removed the instant lawsuit to this federal forum on February 1, 2019, asserting that because Britt had alleged EMTALA violations, this court possessed federal question jurisdiction.

III. ANALYSIS

Mississippi law requires that a prospective plaintiff must provide at least a sixty-day (60) pre-suit notice to defendants where the complaint alleges causes of action sounding in medical

4

malpractice. *See* Miss. Code § 15-1-36(15). In *Pitalo v. GPCH-GP, Inc.*, 933 So.2d 927 (Miss. 2006), the Mississippi Supreme Court held that the sixty-day (60) pre-suit notice is a mandatory prerequisite to filing a medical malpractice lawsuit.[4]

Britt says that he provided adequate notice to an appropriate agent and that Dr. Fulcher's affidavit is self-serving and should be disregarded. Britt cites no authority to support his position. Dr. Fulcher correctly cites the United States Fifth Circuit Court of Appeals which said that "[a] party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone." *C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (quoting *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 513 (5th Cir.1999), *superseded by* Fed.R.Evid. 103(a) *on other grounds as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir.2002) ("[M]erely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient. Much evidence is self-serving and, to an extent, conclusional.")). Instead, "an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving." *Id.* (citing *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 53 (1st Cir.2000) ("[A] party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.")).

This court will not strike Dr. Fulcher's affidavit. This court, however, will allow Britt a brief discovery period to explore the basis and factual content of Dr. Fulcher's affidavit.

---

[4] Pitalo had failed to send any notice to any defendant before filing her lawsuit and the Circuit Court had dismissed her complaint. Pitalo challenged such and the Mississippi Supreme Court upheld the trial court holding that the statutory requirement of Miss. Code § 15-1-36(15) is mandatory.

Further, says Britt, this court should allow discovery to determine whether Dr. Fulcher had been served with the required pre-suit notice. For support, Britt cites F.R.C.P. 56(d)[5] – the rule governing summary judgment. Dr. Fulcher asked this court to dismiss him from this lawsuit under either Rule 12[6] or Rule 56 of the Federal Rules of Civil Procedure. This court finds, based upon the submissions of the parties, that it does not yet possess enough information to grant a Rule 12(b)(6) challenge. Accordingly, this court finds that it must allow Britt's request to conduct discovery related to the pre-suit notice of Dr. Fulcher.

Finally, Britt says that the return receipt from the U.S.P.S. creates a rebuttable presumption that the letter "reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S. 427, 430, 76 L.Ed. 861, 52 S. Ct. 417 (1932)(citations omitted); *see also Threatt v. Threatt*, 212 Miss. 555, 559, 54 So.2d 907, 908-09 (1951). Britt is correct, however, Dr. Fulcher has submitted an affidavit that could possibly rebut Britt's assertion. This court questions the relationship between Dr. Fulcher, Willow Creek, and Rollins. This court does not yet possess enough evidence to issue a decision on Dr. Fulcher's motions to dismiss.

---

[5] (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
    (1) defer considering the motion or deny it;
    (2) allow time to obtain affidavits or declarations or to take discovery; or
    (3) issue any other appropriate order.
Fed. R. Civ. P. 56

[6] (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
    […]
    (6) failure to state a claim upon which relief can be granted; […]
A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.
Fed. R. Civ. P. 12

## IV.     CONCLUSION

This court does not possess enough information to adequately determine whether Britt had effectively served Dr. Fulcher with the required pre-suit notice. Accordingly, the parties may conduct discovery relevant to the questions of the adequacy of service of the pre-suit notice upon Dr. Fulcher. If after conducting such, Dr. Fulcher still believes that his motion has vitality, he may re-urge the motion.

**IT IS, THEREFORE, ORDERED that Dr. Fulcher's Motions to Dismiss are hereby DENIED WITHOUT PREJUDICE [Docket nos. 5 and 9].**

**IT IS FURTHER ORDERED that this case is TEMPORARILY STAYED for sixty (60) days so that the parties may conduct discovery as to the issue of the service of Dr. Fulcher. No other discovery shall be conducted during this sixty (60) day temporary stay.**

**SO ORDERED this the 11th day of September, 2019.**

**s/ HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**